```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

Michelle Mathis,                     :

      Plaintiff,             :

  v.                                :      Case No.  2:08-cv-084

Franklin County Children Services,   :      Judge Smith
    et. al.,                       :      Magistrate Judge Kemp

      Defendants.            :

REPORT AND RECOMMENDATION

This matter is before the Court for an initial screening pursuant to 28 U.S.C. §1915.  For the following reasons, the Court recommends that the case be dismissed for failure to state a claim upon which relief can be granted.

I.

28 U.S.C. §1915(e)(2) provides that in proceedings *in forma pauperis*, "[t]he court shall dismiss the case if ... (B) the action ... is frivolous or malicious [or] fails to state a claim on which relief can be granted...."  The purpose of this section is to prevent suits which are a waste of judicial resources and which a paying litigant would not initiate because of the costs involved. See Neitzke v. Williams, 490 U.S. 319 (1989).  A complaint may be dismissed for failure to state a claim upon which relief can be granted if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). *Pro se* complaints are to be construed liberally in favor of the *pro se* party.  Haines v. Kerner, 404 U.S. 519 (1972).  It is with these standards in mind that the plaintiff's complaint and application for leave to proceed *in forma pauperis* will be considered.

II.

Michelle Mathis, proceeding *pro se*, filed a complaint against defendants Franklin County Children Services ("FCCS") and Ohio Youth Advocate Program ("OYAP"). The following summary is based entirely on Ms. Mathis' complaint. For the purposes of this initial screening, the Court accepts Ms. Mathis' factual statements and allegations as true.

Ms. Mathis' sister has six children who are in the "temporary custody" of OYAP. (Compl. at 1). Previously, both Ms. Mathis and her sister were allowed to visit the children. At some point in time, however, an OYAP case worker denied Ms. Mathis permission to visit the children. (Compl. at 1-2). The OYAP case worker indicated Ms. Mathis was not allowed to visit the children because of Ms. Mathis' "inappropriate usage of language in front of the children, disrespectfulness and hindering of case progress." (Compl. at 2). OYAP also sent a letter to Ms. Mathis, explaining why it denied her permission to visit the children. Id.

After OYAP denied Ms. Mathis permission to visit the children, Ms. Mathis' sister requested reinstatement of Ms. Mathis' visitation privileges during a court hearing. Id. During that court hearing, someone from OYAP (the complaint is unclear whether it was the above-mentioned caseworker or a different OYAP employee) alleged Ms. Mathis "threw a bottle at her" as a reason to deny Ms. Mathis visitation privileges. Id. Although Ms. Mathis' complaint is not clear on the outcome of the hearing, it appears the court declined to reinstate Ms. Mathis' visitation privileges. Id. Additionally, Ms. Mathis requested information about the foster home(s) where the children were located, but the defendants declined to provide that information. Id.

III.

The first issue is whether the Eleventh Amendment bars Ms. Mathis' complaint against FCCS and OYAP. The Eleventh Amendment bars actions for injunctive, declaratory or monetary relief against a state by its own citizens. Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div., 987 F.2d 376, 381 (6th Cir. 1993), (internal citations omitted); see also Abick v. State of Mich., 803 F.2d 874, 876 (6th Cir. 1986). The Eleventh Amendment also confers immunity on any public agency, institution or entity that is considered "an arm of the state." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); see also Dubuc v. Mich. Bd. of Law Exam'rs, 342 F.3d 610, 615 (6th Cir. 2003). The Eleventh Amendment does not, however, confer immunity on a "political subdivision," such as a municipality or county. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Despite a thorough search, the Court could not find any cases that determined if FCCS and OYAP are considered an "arm of the state," and hence, immune to liability, or are more properly characterized as a "political subdivision" that are unable to use the Eleventh Amendment as a shield. See, e.g., Ohio Legal Rights Serv. v. Buckeye Ranch, Inc., 365 F. Supp. 2d 877, 886 (S.D. Ohio 2005), Meyers v. Franklin County Ct. Com. Pl., 81 Fed. Appx. 49, 53-54 (6th Cir. 2003). Therefore, because the Court cannot conclusively determine if the Eleventh Amendment bars Ms. Mathis' claims against FCCS and OYAP, the Court will proceed to the second issue.

The second issue is whether Ms. Mathis' complaint sets forth a valid basis for the Court to adjudicate her claims. Federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). Accordingly, if subject matter jurisdiction does not exist, a federal court cannot adjudicate the action. Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982). Ms. Mathis'

complaint does not contain "a short and plain statement of the grounds for the court's jurisdiction," as required by the federal rules of pleading. See Fed R. Civ. P. 8(b). Keeping in mind the liberal construction of a *pro se* plaintiff's pleading, however, the Court will presume the basis for Ms. Mathis' complaint is federal question jurisdiction.

Federal question jurisdiction can arise in two ways - the plaintiff can plead a cause of action created under federal law, or the federal court can rule on state claims that turn on substantive questions of federal law. Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). First, federal question jurisdiction arises if the plaintiff alleges one or more state law claims that turn on substantive questions of federal law. Here, Ms. Johnson's 2007 complaint alleges two state law claims – fraudulent misrepresentation and defamation. Both claims are common law claims and do not give rise to substantive questions of federal law. Therefore, Ms. Johnson cannot assert federal question jurisdiction based on her state law claims. Second, federal question jurisdiction arises if the plaintiff pleads a cause of action created under federal law. 42 U.S.C. §1983 creates a federal cause of action for the deprivation of a person's constitutional rights. Arledge v. Franklin County Children's Servs. Bd., slip op., 2006 WL 2850518, at *4 (S.D. Ohio Sept. 29, 2006) (citing Tuttle v. Oklahoma City, 471 U.S. 808 (1985)). To state a claim under §1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Tanner v. County of Lenawee, 452 F.3d 472, 477-78 (6th Cir. 2006).

Ms. Mathis asserts the following §1983 claims against FCCS and OYAP: (1) violation of her Fourteenth Amendment due process and

4

equal protection rights, (2) violation of her Fifth Amendment due process rights, and (3) violation of her Eighth Amendment rights. (Compl. at pp. 2-3). The Court will review each of these claims to determine if one or more of them allow Ms. Mathis to successfully plead a federal cause of action under §1983.

                                IV.

The Fourteenth Amendment provides "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. The federal courts have long recognized that the Fourteenth Amendment protects a parent's fundamental right to the custody and upbringing of his or her children. See, e.g. Troxel v. Granville, 530 U.S. 57, 66-67 (2000) ("The liberty interest at issue in this case-the interest of parents in the care, custody, and control of their children-is perhaps the oldest of the fundamental liberty interests recognized by this Court"); and see Wisconsin v. Yoder, 406 U.S. 205, 232 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition").

Ms. Mathis, however, is not the children's parent; she is their aunt. There are no Sixth Circuit or Supreme Court cases that support Ms. Mathis' contention that she has a fundamental right to visit the children, and her argument is further weakened because she does not have custody of the children. In the seminal case of Moore v. City of East Cleveland, Ohio, 431 U.S. 494 (1977), the Supreme Court stated, "The tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition," but also limited that recognition to only "relatives who occupy the same household . . . [and] take on

5

major responsibility for the rearing of the children." Id. at 504; see also Osborne v. County of Riverside, 385 F. Supp. 2d 1048, 1055 (C.D. Cal. 2005) ("[C]lose relatives, such as aunts, have no liberty interest in familial integrity or association with related children, such as nieces, by virtue of genetic link alone").  Here, Ms. Mathis does not occupy the same household as the children, nor does she have custody of them; they currently live in one or more foster homes.  (Compl. at 2).  Because Ms. Mathis does not have a fundamental interest in the visitation of her sister's children, she cannot assert a Fourteenth Amendment violation for the defendants' denial of her visitation privileges.

Assuming, however, that a court would hold Ms. Mathis had a fundamental right to visit the children, Ms. Mathis' complaint still fails to state a valid procedural due process violation, substantive due process violation or equal protection violation under the Fourteenth Amendment.  The Fourteenth Amendment's Due Process Clause protects an individual's right both to procedural due process and substantive due process.  See Troxel, 530 U.S. at 65-66 ("We have long recognized that the Amendment's Due Process Clause . . . guarantees more than fair process . . . The Clause also includes a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests.") (internal citations omitted).  In a procedural due process claim, "the deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Eidson v. Tennessee Dep't of Children's Servs., 510 F.3d 631, 635 (6th Cir. 2007) (citing Zinermon v. Burch, 494 U.S. 113, 125 (1990)).  For example, if a state takes physical custody of a child, but denies the child's parent(s) a custody hearing within a reasonable time, the state's action would constitute a procedural

6

due process violation. <u>Eidson</u>, 510 F.3d at 635.

Ms. Mathis' complaint alleges a procedural due process violation in vague and broad terms, but does not identify any Ohio standard or procedure as unconstitutional, nor does she identify any failure on the part of Ohio to comply with existing statutes and regulations. Instead, her complaint actually states the opposite: "After the banned visitations, *during a court hearing*, plaintiff *(sic)* sister asked the court for the plaintiff to be allowed to visit all the six children. . . ." (Compl. at 2) (emphasis added).

Although the Court construes Ms. Mathis' complaint liberally and in a light most favorable to her, the complaint fails to raise a reasonable inference that FCCS and OYAP violated her procedural due process rights. A complaint's statement of facts that merely produces a suspicion of a legally cognizable cause of action is insufficient. <u>Eidson</u> at 635 (citing <u>Bell Atlantic Corp. v. Twombly</u>, __ U.S. __, 127 S. Ct. 1955, 1965 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.")). Thus, Ms. Mathis' complaint fails to state a valid Fourteenth Amendment procedural due process violation.

Further, Ms. Mathis' complaint fails to state a valid substantive due process violation under the Fourteenth Amendment. To state a substantive due process claim, the plaintiff must allege "conduct intended to injure in some way unjustifiable by any government interest" and that is "conscience-shocking" in nature. <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 849 (1998); <u>accord</u> <u>Mitchell v. McNeil</u>, 487 F.3d 374, 377 (6th Cir. 2007).

Here, Ms. Mathis's complaint does not identify any conduct by FCCS or OYAP that was intended to injure either her or the children. Additionally, FCCS and OYAP have a strong governmental interest in protecting the children from what they perceive as disruptive behavior by Ms. Mathis. <u>See</u> <u>Kottmyer v. Maas</u>, 436 F.3d

684, 690 (6th Cir. 2006) (stating the government has a compelling interest in protecting children equal to a parent's interest in family integrity); and see Eidson, 510 F.3d at 635-36.  Nor does OYAP's court testimony against Ms. Mathis reach the level of "conscience-shocking."  Eidson, 510 F.3d at 636 (court's decision to remove daughters from parent's custody after hearing did not shock the conscience, but parent's assertion that Children's Services denied him that hearing for seven months and perpetrated a fraud upon the court stated a colorable "shocks the conscience" claim).  Thus, Ms. Mathis's complaint fails to state a valid substantive due process violation under the Fourteenth Amendment.

Ms. Mathis' complaint also fails to state a valid equal protection violation under the Fourteenth Amendment.  The Equal Protection Clause prohibits government discrimination that "burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." TriHealth, Inc. v. Bd. of Comm'rs, Hamilton County, Ohio, 430 F.3d 783, 788 (6th Cir. 2005). To state a claim under the Equal Protection Clause, a plaintiff must allege that the government intentionally discriminated against the plaintiff because of the plaintiff's membership in a protected class, or that the government burdened a fundamental right. Midkiff v. Adams County Reg'l Water Dist., 409 F.3d 758, 770 (6th Cir. 2005).

As discussed above, neither the U.S. Supreme Court nor the Sixth Circuit have recognized an aunt's fundamental right to visit her nieces or nephews, so Ms. Mathis has no fundamental right to visit the children. Additionally, Ms. Mathis's complaint does not allege FCCS or OYAP engaged in any class-based discrimination against her when they denied her visitation privileges.  Instead, Ms. Mathis' complaint states that the defendants denied Ms. Mathis' visitation privileges based on her poor behavior in front of the

8

children. Thus, there is no basis for Ms. Mathis' assertion of an equal protection violation under the Fourteenth Amendment.

V.

The Fifth Amendment provides that no person shall be deprived of life, liberty, or property, without due process of law. Fifth Amendment due process claims are analyzed exactly like Fourteenth Amendment due process claims. Mathews v. Eldridge, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment"); Betts v. Brady, 316 U.S. 455, 462 (1942), *overruled in part on other grounds by* Gideon v. Wainwright, 372 U.S. 335 (1963) ("Due process of law is secured against invasion by the federal Government by the Fifth Amendment, and is safeguarded against state action in identical words by the Fourteenth."); Morehead v. People of New York ex rel. Tipaldo, 298 U.S. 587, 610 (1936), *overruled in part on other grounds by* Olsen v. State of Nebraska ex rel. Western Reference & Bond Ass'n, 313 U.S. 236 (1941) ("[T]he restraint imposed by the due process clause of the Fourteenth Amendment upon legislative power of the State is the same as that imposed by the corresponding provision of the Fifth Amendment upon the legislative power of the United States."). However, actions by state or local governmental entities are properly analyzed under the Fourteenth Amendment rather than the Fifth Amendment. Thus, there is no viable Fifth Amendment claim here.

VI.

The Eighth Amendment states "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Court notes Ms. Mathis is proceeding *pro se*, so the Court must afford her complaint a certain amount of

9

leniency. However, *pro se* complaints must still satisfy basic pleading requirements, Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), and "[m]ore than bare assertions of legal conclusions is required to satisfy the notice pleading standard." Dowling v. Select Portfolio Servicing, Inc., 2006 WL 571895 at *4 (S.D. Ohio Mar. 7, 2006)(citing Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)). Pleadings must provide "fair notice of what the [party's] claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).

Simply put, Ms. Mathis' Eighth Amendment claim is conclusory in nature and fails to meet basic pleading requirements. Neither the FCCS nor the OYAP imposed bail or fines on Ms. Mathis. Ms. Mathis' complaint also lacks any legal or factual basis that the defendants' denial of her visitation privileges constitutes "cruel and unusual punishment." Although Ms. Mathis asserts the defendants' revocation of her visitation privileges is a "cruel and unusual punishment" for the children because they have "little to no contact" for "family psychological support, holidays and birthdays" (Compl. at 3), Ms. Mathis brought this action in her name only and not on behalf of the children. Therefore, she can only assert an Eighth Amendment claim based on the alleged violation of her rights. Given the lack of any factual or legal basis for any such violation, Ms. Mathis' complaint does not state a claim for relief under the Eighth Amendment.

## VII.

Ms. Mathis' fraudulent misrepresentation and defamation claims are state law claims. Federal courts have supplemental jurisdiction to hear state law claims if those claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a); see also United Mine Workers of America v. Gibbs, 383 U.S. 715, 724

10

(1966) (Pre-§1367(a) case holding that supplemental jurisdiction arises "whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial."). A federal court, however, has the power to exercise discretion in hearing state law matters. 28 U.S.C. §1367(c). Specifically, if a plaintiff's federal law claims are dismissed before trial, then any state law claims by the plaintiff are also appropriately dismissed. Id.; Gibbs, 383 U.S. at 726; Musson Theatrical, Inc. V. Federal Express Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed."). Additionally, only "overwhelming interest in judicial economy may allow a district court to properly exercise its discretion and decide a [supplemental] state claim even if the federal claim has been dismissed before trial." Aschinger v. Columbus Showcase Co., 934 F.2d 1402, 1412 (6th Cir. 1991).

Here, exercising supplemental jurisdiction over Ms. Mathis' state claims would not be in the interest of judicial economy because Ms. Mathis based her claims on what is essentially a custody dispute, an area where federal courts have traditionally deferred to the States. Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004) ("[The] Court has customarily declined to intervene [in] the realm of domestic relations. Long ago we observed that '[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.'") (citing In re Burrus, 136 U.S. 586, 593 (1890)); see also Drewes v. Ilnicki, 863 F.2d 469, 471-72 (6th Cir. 1988) (Court declined to hear plaintiff's case, stating his complaint was a "mere pretense" for obtaining federal review of the underlying merits of a domestic

11

relations dispute); and see In re Chatman, 2007 WL 4365379 (S.D. Ohio Dec. 10, 2007)(" [C]hild custody is a state law matter.") Therefore, the Court declines to exercise supplement jurisdiction over Ms. Mathis' state claims for fraudulent misrepresentation and defamation.

## VIII.

Ms. Mathis' complaint fails to state a federal claim upon which relief may be granted. Accordingly, the Court recommends that the federal law claims pleaded in the complaint be dismissed for failure to state a claim, and that the state law claims be dismissed without prejudice. It is further recommended that, should the suit be dismissed on these grounds, a copy of the complaint, this Report and Recommendation and the dismissal order be mailed to the defendants.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the

decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

>                                /s/ Terence P. Kemp
>                                United States Magistrate Judge